UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:26-cv-63228

**Quanser Julien,**

**Plaintiff,**

**v.** **JURY TRIAL DEMANDED**

**RAR2-250 NW 130th Avenue FL, LLC and**
**ZRS Management, LLC,**
**Defendants.**
_____________________________________/

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Quanser Julien sues Defendants RAR2-250 NW 130th Avenue FL, LLC and ZRS Management, LLC and alleges as follows.

## INTRODUCTION

1. A landlord that will not spend a service call to remove mold from the home of a medically fragile child but will spend the effort to bill that child's mother after it has pushed her out has made a choice. This case is about that choice and its consequences under the Fair Housing Act, the Florida Fair Housing Act, Chapter 83 of the Florida Statutes, and the lease Defendants themselves wrote.

2. Ms. Julien rented Apartment 04-112 at 12901 NW 1st Street in Pembroke Pines for herself and her young children, one of whom is disabled and was, during the events at issue, fighting a line infection. Mold took hold in the apartment. Ms. Julien reported it, again and again, through the channels the lease required. Defendants did not remediate it; they gave her what she accurately calls "the run around" about so

much as coming to inspect the unit, and the mold spread. On September 5, 2024, the Hollywood Housing Authority inspected the unit, found a mold-like substance in the living room air-conditioning vent and on the bathroom walls and ceiling, designated every deficiency "Owner Responsible," and warned Defendants in writing that failure to repair within thirty days would abate the Housing Assistance Payment and terminate the HAP contract. Defendants let the thirty days run.

3. What followed was not neglect; it was reprisal. When Ms. Julien asked in person to be moved to another unit in the same community to an available unit that would have taken her children out of the mold, Defendants told her the unit was not available and, in the next breath, that they were "due money." Defendants never served the sixty-day written notice of non-renewal the lease requires of them. Instead, the family was displaced at the end of November 2024, left to secure replacement housing at nearly double the rent with a $5,000 security deposit, and then billed by Defendants for charges Defendants know they cannot lawfully impose. Ms. Julien brings this action to recover what that choice cost her family and to hold Defendants to the obligations they undertook in writing.

## PARTIES

4. Plaintiff Quanser Julien is a natural person who at all material times resided at 12901 NW 1st Street, Apartment 04-112, Pembroke Pines, Broward County, Florida 33028, and who now resides in Broward County, Florida. Ms. Julien is the mother of minor children who resided with her in the unit, including a minor son, who has a disability within the meaning of federal and Florida fair-housing law.

5. Defendant RAR2-250 NW 130th Avenue FL, LLC ("Owner") is a limited liability company that owns the apartment community located at 250 NW 130th Avenue, Pembroke Pines, Florida 33028, including the unit at 12901 NW 1st Street, Apartment 04-112. Owner is identified as "the owner" in the Apartment Lease Contract dated November 30, 2023 (the "Lease") and as the owner-addressee of the Hollywood Housing Authority's Notice of HQS Deficiencies dated September 5, 2024.

6. Defendant ZRS Management, LLC ("ZRS") is a limited liability company with its management office at 250 NW 130th Avenue, Pembroke Pines, Florida 33028. ZRS is identified in Paragraph 1 of the Lease as the Manager of the apartments, "authorized to receive notices and demands in the landlord's behalf," and ZRS's property manager executed the Lease on Owner's behalf. At all material times ZRS acted as Owner's agent in managing the premises, receiving and responding to maintenance requests, and communicating with Ms. Julien and the Hollywood Housing Authority.

## JURISDICTION AND VENUE

7. This action arises under the Fair Housing Act, 42 U.S.C. §§ 3601–3619. This Court has original jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 3613(a)(1)(A), and supplemental jurisdiction over the related state-law claims under 28 U.S.C. § 1367(a), because those claims arise from the same tenancy, the same mold, and the same course of conduct.

8. Venue is proper in this District because the premises are located in Broward County, Florida, and the events giving rise to the claims occurred there. Paragraph 38(J)

of the Lease likewise provides that "[a]ll Lease Contract obligations must be performed in the county where the dwelling unit is located."

9. This action is timely. The Fair Housing Act permits suit within two years "after the occurrence or the termination of an alleged discriminatory housing practice." Defendants' discriminatory and retaliatory practices continued through at least December 2, 2024, when Ms. Julien surrendered the keys, and through Defendants' subsequent billing of charges to her.

**FACTUAL ALLEGATIONS**

10. On or about December 1, 2023, Ms. Julien and Owner, acting through ZRS, executed the Lease for Apartment 04-112, 12901 NW 1st Street, Pembroke Pines, Florida 33028, for an initial term beginning December 1, 2023 and ending at 11:59 p.m. on November 30, 2024. The Lease lists Angel Porter and Azul Porter as additional occupants. The monthly rent was $2,848.00.

11. Ms. Julien's tenancy was assisted through the Housing Choice Voucher program administered by the Hollywood Housing Authority ("HHA"), which made Housing Assistance Payments ("HAP") to Owner under a HAP contract.

12. Paragraph 3 of the Lease requires sixty days' written notice of termination or intent to move out and provides: "If the lease term is not a month-to-month tenancy, we must notify you with written notice no later than 60 days before the end of the lease term if the lease will not be renewed."

13. Paragraph 25 of the Lease provides: "We will comply with the requirements of applicable building, housing, and health codes."

14. Paragraph 32 of the Lease obligates Owner to "act with customary diligence to . . . (3) comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and (4) make all reasonable repairs."

15. Paragraph 27 of the Lease requires residents to submit repair requests through the online tenant/maintenance portal or in signed writing, and commits Defendants to "act with customary diligence to make repairs." It expressly identifies "mold and mildew or any habitability issues whatsoever" as conditions of which Defendants were aware could arise.

16. Paragraph 21 of the Lease purports to prohibit residents from "injuring our reputation by making bad faith allegations against us to others," and declares any violation "a material breach of this Lease."

17. Paragraph 33 of the Lease provides that, except where a party seeks exemplary, punitive, sentimental, or personal-injury damages, "the prevailing party may recover from the non-prevailing party attorney's fees and all other litigation costs."

18. During the Lease term, mold developed in the unit, including in the living room air-conditioning vent and on the walls and ceiling of the bathroom.

19. Ms. Julien submitted multiple service requests to Defendants concerning the mold.

20. Defendants did not properly remediate the mold. To the extent Defendants responded at all, their response was inadequate, and the mold worsened and spread.

21. When Ms. Julien pressed for action, Defendants repeatedly deferred, rescheduled, and failed to appear, giving her "the run around about simply coming to inspect the unit for the mold."

22. Defendants knew that Ms. Julien's minor son is disabled and medically fragile. Ms. Julien informed Defendants of his condition and of the particular danger that mold exposure posed to him. During the relevant period, her son was being treated for a line infection, a condition for which medical records exist and will be produced.

23. Defendants also knew that mold in a residential unit is unsafe for every occupant, including Ms. Julien's other young children.

24. Having received no meaningful response from Defendants, Ms. Julien reported the condition of the unit to the Hollywood Housing Authority and to code enforcement authorities.

25. On September 5, 2024, HHA Inspector Janet Oquendo conducted an annual Housing Quality Standards inspection of the unit. The same day, HHA issued to Owner a written "Notice of HQS Deficiencies-Owner" identifying two required corrective actions: (1) "Living Room-Ac vent mold, mildew like substance (Owner Responsible) (Required)" and (2) "Bathroom - (Left-Front) Mold like substance in unit, walls and ceiling (Owner Responsible) (Required)."

26. The HHA notice instructed Owner that it "must notify this office in writing when all repairs are completed" and warned that, pursuant to 24 CFR § 982.404, "if all repairs are not completed within thirty (30) days, and no extension given, the Housing Assistance Payment will be abated, the HAP contract will be terminated and the tenant will have to move out of the dwelling unit."

27. Defendants did not complete the required repairs within thirty days, did not obtain an extension, and did not notify HHA in writing that repairs were complete.

28. As a direct result of Defendants' failure to cure, the Housing Assistance Payment was abated and the HAP contract was terminated, requiring Ms. Julien and her children to leave the unit.

29. Defendants were aware, at the time they declined to remediate, that their inaction would abate the HAP subsidy and terminate the HAP contract. Defendants nonetheless refused to fix the condition.

30. Before the end of the Lease term, Ms. Julien went in person to Defendants' management office and requested a transfer to another unit within the same community so that her disabled son and her other children would not continue to live in a mold-contaminated apartment.

31. At the time of her request, another unit in the community was available.

32. Defendants told Ms. Julien that the unit was not available. Defendants further stated that they would not transfer her because they "were due money."

33. Defendants never served Ms. Julien with the sixty-day written notice of non-renewal that Paragraph 3 of the Lease required of them.

34. Instead, on November 12, 2024, HHA called Ms. Julien in to sign a "60 Days Notice of Intent to Move" on HHA's form, reciting an intent to vacate on November 30, 2024, "the end of my current lease," with a copy to Owner. Ms. Julien signed the form because HHA advised her that the Lease required a notice of non-renewal from both parties and because the termination of the HAP contract itself the product of Defendants' refusal to repair left her no realistic alternative.

35. Ms. Julien's son was still battling his line infection on November 12, 2024, and throughout the move.

36. Ms. Julien vacated the unit on November 30, 2024 and returned the keys on December 2, 2024, the first day the management office was open after her move-out.

37. Displaced from the unit with three young children, Ms. Julien was unable to secure replacement housing until January 15, 2025, when she entered into a Residential Lease for a single-family home at 6839 E Longbow Bend, Davie, Florida 33331, for a term ending December 31, 2025. Between December 2, 2024 and January 15, 2025, Ms. Julien and her children were without a home of their own and forced to utilize hotels at great expense and inconvenience.

38. The replacement home rents for $5,076.00 per month or $2,228.00 more per month than the $2,848.00 rent under the Lease and required a $5,000.00 security deposit. Ms. Julien paid the deposit and move-in funds through money orders and an escrow deposit of $4,260.00 received by American Title Corp. The family also lost the benefit of the HAP subsidy that had assisted the tenancy at Defendants' community.

39. After Ms. Julien vacated, Defendants billed her for charges arising from the end of the tenancy, notwithstanding that Defendants' own breaches of the Lease, the HHA deficiency notice, and the termination of the HAP contract caused the move-out, and notwithstanding that Defendants never served the written non-renewal notice the Lease required of them.

40. Ms. Julien has sent Defendants multiple written demands seeking to resolve this matter and recover her losses. Defendants have not remedied their conduct or compensated her.

**COUNT I – DISCRIMINATION ON THE BASIS OF DISABILITY (Fair Housing Act, 42 U.S.C. § 3604(f)(2), (f)(3)(B))**

*(Against All Defendants)*

41. Ms. Julien realleges paragraphs 1 through 40.

42. The Fair Housing Act makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available." 42 U.S.C. § 3604(f)(2)(B). Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

43. Ms. Julien's minor son is a person with a handicap within the meaning of 42 U.S.C. § 3602(h). Ms. Julien, as a person residing with him and associated with him, is an aggrieved person entitled to sue. 42 U.S.C. §§ 3602(i), 3604(f)(2)(C), 3613(a).

44. Defendants knew of the child's disability and of the disability-related need to remove him from a mold-contaminated environment.

45. Ms. Julien requested a reasonable accommodation: a transfer to an available unit within the same community. The accommodation was reasonable, imposed no undue burden, and was necessary to afford her disabled son an equal opportunity to use and enjoy a dwelling. Defendants refused it, falsely representing that no unit was available and conditioning any relief on money they claimed to be owed.

46. Defendants also discriminated in the provision of services in connection with the dwelling by reducing and withholding mold remediation and air-quality maintenance that they provided, or were obligated to provide, and by refusing even to

inspect the unit, with knowledge that the resulting conditions fell most heavily on a disabled child.

47. As a direct and proximate result, Ms. Julien suffered damages including loss of her home and her housing subsidy, relocation costs, increased rent, out-of-pocket expenses, and emotional distress, humiliation, and loss of enjoyment of her dwelling.

48. Defendants acted intentionally and with reckless disregard for Ms. Julien's federally protected rights, warranting punitive damages under 42 U.S.C. § 3613(c)(1).

**WHEREFORE,** Plaintiff Quanser Julien demands judgment against Defendants RAR2-250 NW 130th Avenue FL, LLC and ZRS Management, LLC, jointly and severally, for (a) actual and compensatory damages, including the loss of her home and Housing Choice Voucher subsidy, hotel and relocation expenses, the $2,228.00 monthly difference between her Lease rent and her replacement rent, the $5,000.00 replacement security deposit, and damages for emotional distress, humiliation, and loss of use and enjoyment of her dwelling; (b) punitive damages under 42 U.S.C. § 3613(c)(1); (c) injunctive relief under 42 U.S.C. § 3613(c)(1) enjoining Defendants from further discrimination on the basis of disability and from collecting or reporting any end-of-tenancy charges arising from the Lease; (d) reasonable attorney's fees and costs under 42 U.S.C. § 3613(c)(2); (e) pre- and post-judgment interest; and (f) such further relief as the Court deems ju

**COUNT II – RETALIATION AND INTERFERENCE (Fair Housing Act, 42 U.S.C. § 3617|**

*(Against All Defendants)*

49. Ms. Julien realleges paragraphs 1 through 40.

50. It is unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" the Fair Housing Act. 42 U.S.C. § 3617; 24 C.F.R. § 100.400(c)(5) (unlawful to retaliate against a person because that person reported a discriminatory housing practice to a housing provider or other authority).

51. Ms. Julien engaged in protected activity by requesting a reasonable accommodation for her disabled son, by demanding remediation of a condition that threatened his health, and by reporting that condition to HHA and code enforcement authorities.

52. Defendants knew of each of these protected activities. The HHA deficiency notice was addressed to Owner by name, identified Ms. Julien as the occupant, and placed Defendants on notice that she had invoked the oversight of a government housing agency.

53. Defendants responded with adverse action: they refused to remediate, refused to inspect, refused to transfer her to an available unit, allowed the HAP contract to be terminated knowing it would force her family out, withheld the non-renewal notice the Lease required, and then billed her for charges they knew to be unlawful.

54. The temporal proximity between the September 5, 2024 inspection, the expiration of the thirty-day cure period in early October 2024, the refusal to transfer, and the November 2024 displacement, together with Defendants' express statements,

establishes a causal connection between Ms. Julien's protected activity and Defendants' adverse actions.

55. Defendants' conduct coerced, intimidated, threatened, and interfered with Ms. Julien's exercise and enjoyment of her rights under the Act, and caused the damages described above.

WHEREFORE, Plaintiff Quanser Julien demands judgment against Defendants RAR2-250 NW 130th Avenue FL, LLC and ZRS Management, LLC, jointly and severally, for (a) actual and compensatory damages, including the damages described in Count I; (b) punitive damages under 42 U.S.C. § 3613(c)(1) for Defendants' intentional retaliation and interference; (c) injunctive relief enjoining Defendants from coercing, intimidating, threatening, or interfering with any person on account of complaints to the Hollywood Housing Authority or code enforcement authorities, and from pursuing the end-of-tenancy charges billed to Ms. Julien; (d) reasonable attorney's fees and costs under 42 U.S.C. § 3613(c)(2); (e) pre- and post-judgment interest; and (f) such further relief as the Court deems just.

**COUNT III – VIOLATION OF THE FLORIDA FAIR HOUSING ACT Fla. Stat. §§ 760.23(7)–(9), 760.37)**

*(Against All Defendants)*

56. Ms. Julien realleges paragraphs 1 through 40.

57. The Florida Fair Housing Act prohibits discrimination in the terms, conditions, or privileges of rental, or in the provision of services or facilities, because

of a handicap of a person residing in the dwelling; defines discrimination to include the refusal to make reasonable accommodations; and makes it unlawful to coerce, intimidate, threaten, or interfere with any person on account of her having exercised rights under the Act. Fla. Stat. § 760.23(7)–(9); Fla. Stat. § 760.37.

58. For the reasons alleged in Counts I and II, Defendants violated the Florida Fair Housing Act, and Ms. Julien is entitled to actual and punitive damages, injunctive relief, and attorney's fees and costs under Fla. Stat. § 760.35(2).

**WHEREFORE,** Plaintiff Quanser Julien demands judgment against Defendants RAR2-250 NW 130th Avenue FL, LLC and ZRS Management, LLC, jointly and severally, under Fla. Stat. § 760.35(2), for (a) actual and compensatory damages as described in Counts I and II; (b) punitive damages; (c) injunctive relief enjoining further violation of Fla. Stat. §§ 760.23(7)–(9) and 760.37; (d) reasonable attorney's fees and costs; (e) pre- and post-judgment interest; and (f) such further relief as the Court deems just.

**COUNT IV – BREACH OF THE LEASE**

*(Against Owner)*

59. Ms. Julien realleges paragraphs 1 through 40.

60. The Lease is a valid and binding contract between Ms. Julien and Owner. ("Exhibit A") Ms. Julien performed her obligations under the Lease, including payment of rent, submission of repair requests in the manner the Lease prescribes, and surrender of the premises and keys at the end of the term.

61. Owner breached the Lease in at least the following respects: (a) it failed to "comply with the requirements of applicable building, housing, and health codes" as Paragraph 25 requires, as HHA's September 5, 2024 deficiency notice confirms; (b) it failed to "act with customary diligence to . . . make all reasonable repairs" as Paragraph 32(4) and Paragraph 27 require; (c) it failed to comply with "applicable federal, state, and local laws regarding safety, sanitation, and fair housing" as Paragraph 32(3) requires; and (d) it failed to provide written notice of non-renewal at least sixty days before the end of the Lease term as Paragraph 3 requires.

62. Owner's breaches caused the abatement of the HAP subsidy, the termination of the HAP contract, and the loss of Ms. Julien's home, and directly caused her relocation expenses, the difference between her contract rent of $2,848.00 and her replacement rent of $5,076.00 per month for the period of displacement, the $5,000.00 replacement security deposit, and other consequential damages that were within the contemplation of the parties when they contracted.

63. Owner's post-tenancy billing of charges to Ms. Julien, after Owner's own breaches caused the move-out and after Owner failed to serve the non-renewal notice the Lease required, is itself a breach of the Lease and of the implied covenant of good faith and fair dealing.

64. Ms. Julien is entitled to recover her attorney's fees and costs as the prevailing party under Paragraph 33 of the Lease.

**WHEREFORE,** Plaintiff Quanser Julien demands judgment against Defendant RAR2-250 NW 130th Avenue FL, LLC for (a) compensatory and consequential damages

for breach of Paragraphs 3, 25, 27, and 32 of the Lease and of the implied covenant of good faith and fair dealing, including hotel and relocation expenses incurred between December 2, 2024 and January 15, 2025, the $2,228.00 monthly rent differential for the period of displacement, the $5,000.00 replacement security deposit, and the lost value of the HAP subsidy; (b) a determination that the end-of-tenancy charges Owner billed to Ms. Julien are not owed and may not be collected or reported; (c) reasonable attorney's fees and costs as the prevailing party under Paragraph 33 of the Lease; (d) pre- and post-judgment interest; and (e) such further relief as the Court deems just.

**COUNT V – VIOLATION OF Fla. Stat. § 83.51 (Landlord's Obligation to Maintain Premises)**

*(Against All Defendants)*

65. Ms. Julien realleges paragraphs 1 through 40.

66. Florida law requires a landlord to "comply with the requirements of applicable building, housing, and health codes" and, in the absence of such codes, to maintain the premises in a habitable condition. Fla. Stat. § 83.51(1). A landlord's failure to comply with this obligation gives rise to an action for damages. Fla. Stat. § 83.55.

67. The HHA's September 5, 2024 determination under 24 CFR § 982.404 that the unit failed Housing Quality Standards because of owner-responsible mold in the air-conditioning vent and on the bathroom walls and ceiling, and Defendants' failure to cure within the thirty-day period, establish Defendants' noncompliance with applicable housing and health codes.

68. Ms. Julien gave Defendants written notice of the condition through repeated service requests and, through HHA, written notice specifying the deficiencies and the consequences of failing to cure. Defendants failed to remedy the condition within a reasonable time.

69. As a direct and proximate result, Ms. Julien suffered the damages described above, and she is entitled to recover them together with attorney's fees and costs under Fla. Stat. § 83.48.

## COUNT VI – RETALIATORY CONDUCT Fla. Stat. § 83.64)

*(Against All Defendants)*

70. Ms. Julien realleges paragraphs 1 through 40.

71. Florida law prohibits a landlord from discriminatorily increasing a tenant's rent or decreasing services to a tenant, or from bringing or threatening to bring an action for possession or other civil action, "primarily because the landlord is retaliating against the tenant," including where the tenant "has complained to a governmental agency charged with responsibility for enforcement of a building, housing, or health code of a suspected violation applicable to the premises." Fla. Stat. § 83.64(1)(a).

72. Ms. Julien complained in good faith to HHA and to code enforcement authorities of an actual code violation that HHA confirmed on inspection.

73. Defendants thereafter decreased services to Ms. Julien by withholding mold remediation and air-quality maintenance, refused to transfer her to an available unit, caused her displacement, and billed her for unlawful charges, primarily because she had exercised her rights under the law. Defendants' statement that they were "due

money" and their failure to serve the required non-renewal notice evidence that Defendants' conduct was not undertaken for any legitimate reason.

74. Ms. Julien is entitled to damages, attorney's fees, and costs for Defendants' retaliatory conduct.

**WHEREFORE,** Plaintiff Quanser Julien demands judgment against Defendants RAR2-250 NW 130th Avenue FL, LLC and ZRS Management, LLC, jointly and severally, for (a) damages caused by Defendants' retaliatory conduct in violation of Fla. Stat. § 83.64(1)(a), including the losses described above; (b) a determination that the end-of-tenancy charges billed to Ms. Julien were imposed in retaliation and are unenforceable; (c) reasonable attorney's fees and costs under Fla. Stat. § 83.48; (d) pre- and post-judgment interest; and (e) such further relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Ms. Julien demands trial by jury on all issues so triable. To the extent Defendants invoke Paragraph 40 of the Lease, Ms. Julien contends that a pre-dispute jury waiver contained in a form residential lease of adhesion is unenforceable as applied to her federal and state civil-rights claims, and she reserves all arguments on that question.

## VERIFICATION

Under penalties of perjury, I, Quanser Julien, declare that I have read the foregoing Verified Complaint and that the facts stated in it are true and correct to the best of my

knowledge and belief, except as to matters alleged on information and belief, and as to those matters I believe them to be true.

Executed on this 13th day of November 2026.

Quamser Julien

Neil Bryan Tygar, P.A.
Attorneys for Plaintiff
By: s/ Neil Tygar
Neil Tygar
Executive Square Plaza
5341 West Atlantic Avenue, Suite 303
Delray Beach, FL 33484
561-455-0280 Phone
561-305-5214 Cellular Phone
561-455-0281 Fax
Florida Bar No. 0911100
**Primary E-Mail Address: ntygar@me.com**
**Secondary E-Mail neiltygarlaw@gmail.com**